UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ANIBAL EDGARDO MEJIA GUZMAN,

                                    Petitioner,

        -against-                                                             25-cv-10462 (LAK)

WILLIAM P. JOYCE, in his official capacity as Deputy
Field Office Director of New York, U.S. Immigration and
Customs Enforcement; KRISTI NOEM, in her official
capacity as Secretary of the U.S. Department of Homeland
Security; PAMELA BONDI, in her official capacity as
Attorney General of the United States; PAUL ARTETA, in
his official capacity as Sheriff of Orange County, New York,

                                    Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

                Appearances:

                        Jesse Paul Levine
                        EHRINPREIS & LEVINE, PLLC
                        *Attorney for Petitioner*

                        Pierre G. Armand
                        Assistant United States Attorney
                        JAY CLAYTON
                        UNITED STATES ATTORNEY
                        *Attorney for Respondents*

LEWIS A. KAPLAN, *District Judge*.

                The petitioner in this case, a noncitizen, was arrested months ago and charged civilly under the immigration laws with being removable from the United States under Section

2

212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended (the "INA"),[1] as a noncitizen present in the United States without being admitted or paroled.  He has been detained ever since.  He now seeks a petition for a writ of habeas corpus releasing him or granting other relief on the ground that his arrest and detention were and are unlawful.

This case again presents the question whether the petitioner's detention is mandated by INA Section 235(b)(2)(A)[2] or whether his detention or conditional and temporary freedom instead is governed by Section 236.[3]

*Facts*

*Petitioner's Immigration History*

Mr. Mejia is a forty-seven year-old father of two U.S. citizens and husband to a lawful permanent resident of the United States.[4]  He is also a citizen and native of Honduras.[5]  He left his home country in 1998, and entered the United States illegally at an unknown time and place.[6]  He was not apprehended by immigration authorities upon entering the United States nor was he

---

[1] 8 U.S.C. § 1182(a)(6)(A)(i).

[2] 8 U.S.C. § 1225(b)(2)(A).

[3] 8 U.S.C. § 1226.

[4] Pet. Writ Habeas Corpus (Dkt 1) ¶ 21.

[5] Paulino Decl. (Dkt 7) ¶ 2.

[6] *Id.* ¶ 3.

3

identified by U.S. Customs and Immigration Enforcement ("ICE") until January 2007.[7] Around that time, ICE temporarily detained Mr. Mejia as a noncitizen present in the United States who entered without inspection.[8] ICE then released him on a $15,000 bond.[9]

In 2010, while Mr. Mejia's subsequent removal proceedings played out, he was convicted of driving while intoxicated, a misdemeanor.[10] This was his second conviction for driving while intoxicated – his first having been in 2006.[11] After he served his state sentence for the 2010 misdemeanor conviction, ICE again released him on bond.[12] Ultimately, Mr. Mejia was ordered to depart the United States voluntarily, which he did on November 5, 2010.[13]

Less than a year later, on or about June 1, 2011, Mr. Mejia re-entered the United States illegally.[14] He did so again unbeknownst to and without being apprehended by immigration authorities.[15] Since re-entering the United States, Mr. Mejia has started a business and had not had

---

[7] *Id.* ¶¶ 3, 5.

[8] *Id.* ¶ 5.

[9] *Id*.

[10] *Id.* ¶¶ 6-7.

[11] *Id.* ¶ 4.

[12] *Id.* ¶ 8.

[13] *Id.*

[14] *Id.* ¶ 10.

[15] *See id.* ¶¶ 10-11.

4

any further encounters with law enforcement until this case.[16]

*Current ICE Detention*

On April 11, 2025, ICE agents were searching for a different target in Mr. Mejia's neighborhood when they saw Mr. Mejia leave his house and get into his car.[17] Mistakenly believing that Mr. Mejia was their intended target, ICE agents stopped Mr. Mejia's car and arrested him.[18] ICE agents falsely claimed that Mr. Mejia resisted arrested and that he had to be physically subdued.[19] Even though they discovered that Mr. Mejia was not their intended target, they nonetheless took him into custody and charged him as removable under INA Section 212(a)(6)(A)(i)[20] as a noncitizen present in the United States without being admitted or paroled.[21]

ICE held Mr. Mejia in immigration detention from April 11, 2025, until May 1, 2025, first in the ICE Central Islip temporary "hold room,"[22] then the Nassau County Correctional Center,

---

[16] Pet. Writ Habeas Corpus (Dkt 1) ¶ 22.

[17] *See* Paulino Decl. (Dkt 7) ¶ 11.

[18] *Id.* ¶ 12.

[19] *Id.*

[20] 8 U.S.C. § 1182(a)(6)(A)(i).

[21] Paulino Decl. (Dkt 7) ¶ 14.

[22] The "substandard, abhorrent, and likely unlawful" conditions of the ICE Central Islip temporary "hold room" were described in a recent opinion by Judge Brown of the Eastern District of New York. *Clarke v. U.S. DHS*, No. 25-CV-6773, 2025 WL 3674471 (E.D.N.Y. Dec. 18, 2025); *id.*, at *6. There, Judge Brown found that "[t]he evidence presented to this Court, which has been largely unrebutted, demonstrates that ICE has been deploying its

5

and then the Orange County Jail (the "OCJ").[23] On May 1, 2025, however, ICE transferred Mr. Mejia to the custody of the U.S. Marshals Service.[24] That is because, in addition to commencing new removal proceedings against Mr. Mejia, federal authorities instituted a criminal case against him with respect to his arrest.[25] Federal prosecutors charged him in the Eastern District of New York with assaulting, resisting, or impeding ICE agents.[26] On August 14, 2025, a jury found Mr. Mejia not guilty of that charge.[27] Mr. Mejia nevertheless continued to be detained, then by ICE yet again.[28] And again ICE moved Mr. Mejia around, in one day holding him first in the ICE Central Islip temporary "hold room" again, then the Elizabeth Contract Detention Facility, then the ICE New York City temporary "hold room," and finally the OCJ.[29] That is where Mr. Mejia remains today.[30]

---

'holding rooms' in a manner that shocks the conscience." *Id.*, at *6. Judge Brown concluded that "[a]fter nearly 35 years of experience with federal law enforcement in this judicial district, encompassing service as a prosecutor and a judge, I have never encountered anything like this. ICE's seeming disregard of procedural requisites, combined with the chillingly brutal conditions of confinement to which Petitioner has been, and presumably would continue to be subjected, cries out for immediate remedy." *Id.*, at *9.

[23]  Paulino Decl. (Dkt 7) ¶¶ 13-16.

[24]  *Id.* ¶ 20.

[25]  *Id.* ¶¶ 14, 17.

[26]  *Id.* ¶ 17.

[27]  *Id.* ¶ 24.

[28]  *Id.* ¶ 25.

[29]  *Id.* ¶¶ 25-26.

[30]  *Id.* ¶ 27.

6

On September 5, 2025, Mr. Mejia had a bond redetermination hearing before an immigration judge.[31] Despite Mr. Mejia's acquittal in his criminal case and his lack of a criminal record beyond his 2006 and 2010 convictions for driving while intoxicated, the immigration judge denied Mr. Mejia bond under Section 236, finding him to be a danger to the community and a flight risk.[32] On December 4, 2025, Mr. Mejia filed a bond redetermination request, but the immigration judge denied his request, that time holding that Mr. Mejia was mandatorily detained pursuant to Section 235(b)(2)(A).[33]

After being held in criminal custody for over four months and ICE detention for an additional three months, Mr. Mejia filed this petition on December 17, 2025.[34]

*Prior Proceedings*

In accordance with 28 U.S.C. § 2243, on December 18, 2025, the Court ordered respondents to show cause why the petition should not be granted.[35] Respondents answered on December 21, 2025. The Court entered a temporary restraining order later that same day, enjoining respondents from causing Mr. Mejia to be taken out of this District or the District of New Jersey

---

[31] *Id.* ¶ 30.

[32] *Id.*

[33] *Id.* ¶ 31.

[34] It is undisputed that Respondent Paul Arteta, the Sheriff of Orange County, New York, and the official in charge of the OCJ, had immediate physical custody of Mr. Mejia when Mr. Mejia commenced this action.

[35] Order (Dkt 5).

7

while the petition remained pending.[36] Mr. Mejia then filed his reply on December 22, 2025. Because the parties do not dispute any material facts, the Court resolves the petition on the existing record.[37]

*Grounds for Habeas Relief*

Mr. Mejia challenges his detention. He argues that Section 235(b)(2)(A) does not apply to him because he entered and had been living in this country for fourteen years before ICE redetained him in April 2025. He argues that his detention should be governed instead by Section 236, which allows for a noncitizen to be released on bond or conditional parole pending a decision on whether the noncitizen is to be removed from the United States. He claims that his present detention therefore is in violation of the INA.

Mr. Mejia further alleges that his detention is in violation of the district court's judgment in *Maldonado Bautista v. Noem*.[38] There, the district court certified a nationwide class to which Mr. Mejia claims to belong and recently entered final judgment in favor of the class, declaring that its "members are detained under [Section 236(a)] and are not subject to mandatory detention under [Section 235(b)(2)]."[39]

Mr. Mejia claims also a violation of his rights under the Due Process Clause because

---

[36] TRO (Dkt 10).

[37] *See* 28 U.S.C. § 2243; *id.* § 2248.

[38] No. 25-cv-1873, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).

[39] *Id.*, at *1.

8

the immigration judge who denied Mr. Mejia's first request for release on bond relied on the mere fact that Mr. Mejia faced criminal charges with respect to his arrest by ICE agents.  Mr. Mejia argues that such reliance was a violation of due process because he was acquitted of any wrongdoing by a jury following trial.

Finally, Mr. Mejia claims that his detention violates the Administrative Procedure Act[40] because it is arbitrary and capricious.

*The Response*

Respondents' arguments opposing Mr. Mejia's habeas petition mirror those advanced in *Barco Mercado*,[41] *Cunas Hurtado v. Genalo*,[42] and *Shi v. Almodovar*.[43]  Respondents offer no new arguments for why, in their view, Section 235(b)(2)(A) governs Mr. Mejia's detention or why, if it does not, they have acted in accordance with the INA.  Indeed, respondents agree that "[t]he principal legal issue in this case is the same as in *Barco Mercado*."[44]  They agree further that the "Court's determination in *Barco Mercado* that [Section 236] applies under circumstances materially indistinguishable to [Mr. Mejia] here . . . would resolve the petition if the Court adheres to it here."[45]

---

[40] 5 U.S.C. § 706(2)(A).

[41] No. 25-cv-6582 (LAK), 2025 WL 3295903 (S.D.N.Y. Nov. 26, 2025).

[42] No. 25-cv-9172 (LAK), 2025 WL 3458605 (S.D.N.Y. Dec. 2, 2025).

[43] No. 25-cv-9905 (LAK), 2025 WL 3542144 (S.D.N.Y. Dec. 10, 2025).

[44] Resp'ts' Dec. 21, 2025 Letter (Dkt 8) at 1.

[45] *Id.*

### *Discussion*

The Court adheres to its determination in *Barco Mercado* that Section 236 applies in circumstances materially indistinguishable to those of Mr. Mejia here. As in *Barco Mercado*, detaining Mr. Mejia pursuant to an inapplicable statute – Section 235(b)(2)(A) – violates the INA, not to mention Mr. Mejia's due process rights. As respondents have conceded, the Court's decision in *Barco Mercado* resolves this petition. Their only dispute here is their contention that the appropriate relief is to allow Mr. Mejia to seek a bond hearing before an immigration judge under Section 236 while remaining in immigration detention. Granting Mr. Mejia a bond hearing before an immigration judge would fail to remedy the statutory and constitutional violation that has occurred here. Moreover, it would be futile because, in the absence of a statute, regulation, or a new controlling decision from the Board of Immigration Appeals ("BIA"), immigration judges will continue to be bound by the BIA's holding in *Matter of Yajure Hurtado* that "Immigration Judges lack authority to hear bond requests or to grant bond to aliens . . . who are present in the United States without admission."[46]

---

[46] 29 I. & N. Dec. 216, 225 (B.I.A. 2025).

## *Conclusion*

For the foregoing reasons, Mr. Mejia's petition for a writ of habeas corpus (Dkt 1) is granted. Respondents shall release Mr. Mejia immediately and file with the Clerk of Court, no later than 4 p.m. on December 24, 2025, an affidavit or declaration confirming that they have released Mr. Mejia as directed. The Clerk is directed to terminate this action upon receipt of such an affidavit or declaration. Pending a final determination in his removal proceedings, Mr. Mejia shall remain free of detention or any other restraint under the immigration laws of the United States to which he was not subject – including INA Section 235(b)(2)(A) – on April 11, 2025.

SO ORDERED.

Dated:      December 23, 2025
Issued at:  *5:30 p.m.*

_____
Lewis A. Kaplan
United States District Judge